STATE OF NORTH CAROLINA v. PATRICIA DAWN ABSHIRE, Defendant

No. COA07-1185

(Filed 16 September 2008)

**1. Sexual Offenders— sex offender registration—date of offense—indictment sufficient**

An indictment for failing to comply with the sex offender registration statute was not fatally deficient as to the time during which the offense occurred where it alleged that defendant moved "on or about August 30 to September 4, 2006," and that the offense occurred "on or about September 14 to 18, 2006."

**2. Sexual Offenders— registration—temporary move**

The State did not present sufficient evidence that a registered sex offender had changed her address without notice in violation of the registration statute where she temporarily stayed with her father, but continued to receive her mail at the registered address and did not present any other indicia that she had changed her residence, such as moving her belongings and pets, or not holding out the registered address to the public as her address. The only address defendant was required to register was her home address, which is not synonymous with domicile.

Judge HUNTER dissenting.

Appeal by defendant from judgment entered 28 February 2007 by Judge Nathaniel J. Poovey in Caldwell County Superior Court. Heard in the Court of Appeals 19 March 2008.

*Attorney General Roy Cooper, by Assistant Attorney General J. Joy Strickland, for the State.*

*James N. Freeman, Jr., for defendant.*

ELMORE, Judge.

On 28 February 2007, Patricia Dawn Abshire (defendant) was convicted by a jury of failing to comply with sex offender registration in violation of N.C. Gen. Stat. § 14-208.11. Defendant received a sentence of thirteen to sixteen months' imprisonment. Her sentence was suspended for eighteen months and she was placed on supervised probation. Defendant now appeals. For the reasons stated below, we vacate her conviction.

## I. Background

Defendant was convicted of indecent liberties with a child in 1995.[1] As a result, she must comply with the requirements of the North Carolina Sex Offender and Public Protection Registration Programs (the Registration Program). Under the Registration Program, she must "maintain registration with the sheriff of the county where [she] resides." N.C. Gen. Stat. § 14-208.79(a) (2005). Each sheriff has "forms for registering person as required . . . ." N.C. Gen. Stat. § 14-208.7(b) (2005). These forms require a registering person to provide, among other things, her "home address." N.C. Gen. Stat. § 14-208.7(b)(1) (2005). "If a person required to register changes address, the person shall provide written notice of the new address not later than the tenth day after the change to the sheriff of the county with whom the person had last registered." N.C. Gen. Stat. § 14-208.9(a) (2005).[2]

On 19 July 2006, defendant submitted a change of address form to the Caldwell County Sheriff's Office. She listed her old address as 2155 White Pine Dr. #9, Granite Falls, NC, in Caldwell County. She listed her new address as 3410 Gragg Price Lane, Hudson, NC, also in Caldwell County. This was the thirteenth change of address form that defendant had submitted since becoming subject to the Registration Program requirements.

Ross Lee Price, the father of defendant's then-boyfriend, owned and lived in the house at 3410 Gragg Price Lane. Defendant's then-boyfriend was incarcerated at the time. On or about 19 August 2006, someone broke into the house at Gragg Price Lane and stole defendant's daughter's computer. Approximately ten days later, defendant and her two children began spending the night at defendant's parents' house, located on Poovey Drive in Granite Falls, also in Caldwell County. She slept at Gragg Price Lane on 9 September and 14 September 2006 and received her mail there. According to defendant's testimony, she also maintained a personal telephone number at Gragg Price Lane and returned "almost everyday" to do

1. Although judgments from defendant's indecent liberties with a child case appear to have been entered as State's exhibits during the trial, the judgments were not a part of the record on appeal and we rely solely on testimony for information about her conviction.

2. The General Assembly amended several sections of the Registration Program effective 1 December 2006 and 1 June 2007. However, defendant's alleged crimes occurred before these amendments took effect, so we evaluate her conviction under the 2005 statutes.

laundry, pick up fresh clothes, "hang out," and to feed her dog, fish, and three cats. She and her father both testified that she never brought a suitcase to Poovey Drive. Defendant also testified that she "never planned on moving [to Poovey Drive], living there, anything like that. Gragg Price Lane was mine and my children's home. My father's was just a getaway."

On 13 September 2006, defendant's brother attacked her. According to the criminal complaint she filed on 18 September 2006, her brother punched her "in the face, head, ribs, and stomach," and "threatened to kill [her] and make [her] daughters watch [her die.]" On the criminal complaint, defendant listed her address as Poovey Drive.

On 18 September 2006, Detective Aaron S. Barlowe of the Caldwell County Sheriff's Office began an investigation into defendant's whereabouts after receiving a report from a social worker that defendant could not be found at Gragg Price Lane. Detective Barlowe spoke with Price on 18 September 2006. Detective Barlowe testified that Price told him that defendant "was not living there at the residence" and had gone to "stay with her father." Detective Barlowe testified that Price felt "that she. ha[d] been gone for more than ten days," but "at the same time indicated, 'She is planning on moving back to the house at some point,' but did not know when." Detective Barlowe asked what day defendant "actually moved out and he said he wasn't very good with dates and couldn't remember that, but did indicate that she had been gone for two to three weeks, but might have stayed a night." Price testified that he might have said those things to Detective Barlowe, but could not remember clearly because of the passage of time.

Detective Barlowe arrested defendant and she signed the following statement on 19 September 2006:

About 10 days after I filed the breaking and entering report when my house was broken into and my daughter's computer was stolen I went to stay with my father at 5739 Poovey Drive. I decided that if I went to stay with my dad for a week or two, I could get my emotions together. I told Ross that I was going to stay with my dad so I could get my self emotionally stable and I would come back home. I was planning on going back home this past weekend but I was attacked by my brother and I decided to stay with my dad for a little bit longer. I am moving back into the house on Friday after her [sic] girls are out of school. I still

received my mail at 3410 Gragg Price Lane[.] I would pick the mail up or Ross would bring me my mail about twice a week. I went back and stayed the night on the 9th and 14th of September. I was not planning n [sic] moving from the house but only staying for a week or two with my father.

Detective Barlowe also received the following note from defendant's father, Robert Abshire: "To Whom it may Concern, Patricia has staye [sic] at my home for the past 5-6 weeks. During that time she would go to Ross's Houses [sic] and stay once every 7-10 days[.]"

## II. Subject Matter Jurisdiction

[1] Defendant first argues that the trial court lacked subject matter jurisdiction because the indictment was fatally deficient. The indictment alleged, "On or about August 30 to September 4, 2006[;] the defendant moved to a residence at 5739 Poovey Drive, Granite Falls, NC 28630 and the defendant had not contacted the Caldwell County Sheriff's Office to change her address within 10 days of that move) [sic]." The indictment stated that the offense had occurred "ON OR ABOUT September 14 to 18, 2006."

An indictment must include

A statement or cross reference in each count indicating that the offense charged was committed on, or on or about, a designated date, or during a designated period of time. Error as to a date or its omission is not ground for dismissal of the charges or for reversal of a conviction if time was not of the essence with respect to the charge and the error or omission did not mislead the defendant to his prejudice.

N.C. Gen. Stat. § 15A-924(a)(4) (2005).

Defendant argues that "the vagueness and inexactness of the dates alleged for the violation in the indictment are fatal . . . ." Specifically, she argues that by alleging a range of dates during which the offense occurred, "the violation is so broad as to subject [defendant] to the possibility of being subjected to double jeopardy under the same facts." We disagree.

N.C. Gen. Stat. § 15A-924(a)(4) allows indictments to designate a "period of time" during which "the offense charged was committed." Here, the indictment alleged a four-day period of time during which the offense could have occurred. "[A] variance as to time . . . becomes material and of the essence when it deprives a defendant of an oppor-

tunity to adequately present his defense." *State v. Stewart*, 353 N.C. 516, 518, 546 S.E.2d 568, 569 (2001) (quotations and citation omitted). "When . . . the defendant relies on the date set forth in the indictment to prepare his defense, and the evidence produced by the State substantially varies to the prejudice of the defendant," an indictment does not meet the requirements of N.C. Gen. Stat. § 15A-924(a)(4). *Id.* (citations omitted). In *Stewart*, the indictment listed the date of the offense as "7-01-1991 to 7-31-1991," and the "defendant prepared and presented alibi evidence in direct reliance on those dates." *Id.* However, the State "presented no evidence of a specific act occurring during July 1991." *Id.* at 519, 546 S.E.2d at 570. Our Supreme Court held that "[u]nder the unique facts and circumstances of this case, . . . the dramatic variance between the date set forth in the indictment and the evidence presented by the State prejudiced defendant by depriving him of an opportunity to adequately present his defense." *Id.* (quotations and citation omitted).

Here, the State's evidence focused on events that occurred between 30 August 2006 and 19 September 2006. The State presented evidence of defendant's whereabouts between 30 August 2006 and 4 September 2006 in the form of defendant's signed statement from 19 September 2006. In that statement, she stated, "About 10 days after I filed the breaking and entering report when my house was broken into and my daughter's computer was stolen I went to stay with my father at 5739 Poovey Drive." Defendant testified that she filed the breaking and entering report on 20 August 2006. It follows from that evidence that defendant "went to stay" at her father's home between 30 August 2006 and 4 September 2006. Whether that evidence was sufficient to support every element of the crime charged is the subject of defendant's next argument.

III. Insufficiency of the Evidence

[2] Defendant next argues that the trial court erred by denying her motion to dismiss for insufficiency of the evidence. Defendant moved to dismiss at the close of the State's evidence and the close of all evidence. The trial court verbally denied the motion in both instances. Defendant argues that the State failed to present sufficient evidence that defendant changed her address, and therefore the trial court should have granted her motion to dismiss. We agree.

> Our review of the trial court's denial of a motion to dismiss is well understood. [W]here the sufficiency of the evidence . . . is challenged, we consider the evidence in the light most favorable to

the State, with all favorable inferences. We disregard defendant's evidence except to the extent it favors or clarifies the State's case. When a defendant moves for dismissal, the trial court must determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense. Substantial evidence is that evidence which a reasonable mind might accept as adequate to support a conclusion.

*State v. Hinkle*, 189 N.C. App. 762, 766, 659 S.E.2d 34, 36-37 (2008) (quotations and citation omitted; alteration in original).

The crime in question, failing to register a "change of address" pursuant to N.C. Gen. Stat. § 14-208.11, has three essential elements: (1) the defendant is "a person required to register," (2) the defendant "changes address," and (3) the defendant fails to "provide written notice of the new address not later than the tenth day after the change to the sheriff of the county with whom the person had last registered." N.C. Gen. Stat. §§ 14-208.9, 14-208.11 (2005). Defendant does not dispute that she is "a person required to register." She does dispute, however, that she changed her address.

The term "change of address" is not defined in the statute or the case law. The statute includes a list of definitions, but neither "change" nor "address" is among them. N.C. Gen. Stat. § 14-208.6 (2005). We have previously addressed whether defendants violated N.C. Gen. Stat. § 14-208.11 by failing to register a change of address, but in each of those cases, the "change of address" in question was obvious or was not at issue on appeal. *See, e.g., State v. Wise*, 178 N.C. App. 154, 164, 630 S.E.2d 732, 738 (2006) (noting that the "defendant's problems with his father's girlfriend began soon after he began living at th[e registered] address [in June 2003], and caused defendant to move out soon thereafter," which supported the State's position that the defendant was no longer living at the registered address in June 2004); *State v. Harrison*, 165 N.C. App. 332, 333, 598 S.E.2d 261, 261 (2004) (noting that when a sheriff's deputy visited the defendant's registered address in March 2002, the "occupant informed the deputy that she had been residing in the house since May 2001 and did not know defendant"); *State v. Holmes*, 149 N.C. App. 572, 578, 562 S.E.2d 26, 31 (2002) (noting that the defendant notified the sheriff's office by telephone "when he moved from Fifth Street to East Raleigh Avenue on 18 August 1998," but failed to fill out a change of address form until 6 November 1998); *State v. Parks*, 147 N.C. App. 485, 487, 556 S.E.2d 20, 22 (2001) (noting that the defendant had sub-

mitted Registration Program information under false pretenses when he registered his ex-wife's address even after she "informed him by letter that she was obtaining a divorce, and that her home in Concord would no longer be his residence," "installed new locks on the doors to her house and transported defendant's personal property to his sister's home" while the defendant was still incarcerated). Accordingly, we find the existing case law uninstructive on this point.

"When the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required." *In re R.L.C.*, 361 N.C. 287, 292, 643 S.E.2d 920, 923 (2007) (quotations and citations omitted). Here, however, we are confronted with language that is not clear and unambiguous. At trial, both the jury and the judge questioned the statute's meaning. During jury deliberations, the jury sent a note to the trial judge requesting "a copy of law stating what constitutes a residence in regards to sex offenders . . . ." The trial judge read the note in open court to the attorneys and commented, "I looked in the statute yesterday to see whether or not there was any definition for change of address, because that is— that's the term of art that's used in this statute and is definitely ambiguous . . . ." After some discussion, the prosecutor recommended "just to read the instruction again, so they can hear the law as to the elements." The trial judge replied, "It's a bad law or a poorly worded law; poorly worded instruction." The judge then brought the jury back to the courtroom and re-read portions of the jury instructions. Addressing the jury's request for a definition, he stated:

> Members of the jury, the words I have used in these instructions are to be given their ordinary meaning. There is no extra special meaning or different meaning than these words are used commonly in the English language. I'm not going to define any words for you, but I'm simply going to instruct you that you are to use the ordinary meanings that these words have as commonly used in the English language.

We agree with Judge Poovey that the term "change of address" is ambiguous.

"[W]hen the language of a statute is ambiguous, this Court will determine the purpose of the statute and the intent of the legislature in its enactment." *Id.* (quotations and citations omitted). "In discerning the intent of the General Assembly, statutes *in pari materia* should be construed together and harmonized whenever pos-

sible." *State v. Jones*, 359 N.C. 832, 836, 616 S.E.2d 496, 498 (2005) (citation omitted).

The purpose of the Registration Program is

to assist law enforcement agencies' efforts to protect communities by requiring persons who are convicted of sex offenses or of certain other offenses committed against minors to register with law enforcement agencies, to require the exchange of relevant information about those offenders among law enforcement agencies, and to authorize the access to necessary and relevant information about those offenders to others . . . .

N.C. Gen. Stat. § 14-208.5 (2005). In reaching this conclusion, the General Assembly specifically recognized that "law enforcement officers' efforts to protect communities, conduct investigations, and quickly apprehend offenders who commit sex offenses or certain offenses against minors are impaired by the lack of information available to law enforcement agencies about convicted offenders who live within the agency's jurisdiction." *Id.*

The section that follows the registration requirement, N.C. Gen. Stat. § 14-208.9A, sets out how law enforcement agencies verify each registrant's "address":

(1) Every year on the anniversary of a person's initial registration date, the Division shall mail a nonforwardable verification form to the last reported address of the person.

(2) The person shall return the verification form to the sheriff within 10 days after the receipt of the form.

(3) The verification form shall be signed by the person and shall indicate whether the person still resides at the address last reported to the sheriff. If the person has a new address then the person shall indicate that fact and the new address.

(4) If the person fails to return the verification form to the sheriff within 10 days after receipt of the form, the person is subject to the penalties provided in G.S. 14-208.11. If the verification form is returned to the sheriff as undeliverable, the sheriff shall make a reasonable attempt to verify that the person is residing at the registered address. . . .

N.C. Gen. Stat. § 14-208.9A (2005). A reasonable reading of § 14-208.9A indicates that one sends mail to an "address" and a per-

son can reside at an "address." Section 14-208.7 sets out the information that a registrant must register with the sheriff and it specifies that a registrant must list her "home address." N.C. Gen. Stat. § 14-208.7(b)(1) (2005). The penalty provisions in § 14-208.11 refer to a registrant's "address," rather than a registrant's "home address," but this may be explained by the separate obligation of certain nonresident registrants who are "employed or expect[] to be employed at an institution of higher education" to register the "address of the educational institution at which the person is or expects to be employed." N.C. Gen. Stat. § 14-208.7(a1), (b)(6) (2005). Such nonresident registrants must register both their home addresses and their work addresses. Defendant does not fall into this category of registrants and the only address that the Registration Program required her to register in 2006 was her "home address." Therefore, with respect to her appeal, we read the terms "address" and "home address" interchangeably. Accordingly, reading § 14-208.9A with §§ 14-208.5, 14-208.7, and 14-208.9, we define a "home address," as it applies to the Registration Program, as a place where a registrant resides and where that registrant receives mail or other communication.

We caution that this definition of "home address" is not synonymous with "domicile," just as "*residence* and *domicile* are not convertible terms." *Hall v. Board of Elections*, 280 N.C. 600, 605, 187 S.E.2d 52, 55 (1972). "Domicile" is a term of art and has a more fixed meaning in the law than "home address" or "residence." *See, e.g., id.* at 605, 187 S.E.2d at 55 ("Domicile denotes one's permanent, established home as distinguished from a temporary, although actual, place of residence. When absent therefrom, it is the place to which he intends to return (*animus revertendi*); it is the place where he intends to remain permanently, or for an indefinite length of time, or until some unexpected event shall occur to induce him to leave (*animus manendi*)."). The General Assembly chose to use the terms "home address" and "residence" rather than "domicile," and we would be overstepping our bounds by reading "domicile" into the statute.

We note that the State urges us to read "address" as "location," which we decline to do because such a reading is inconsistent with §§ 14-208.7 and 14-208.9A, is inconsistent with the statute's purpose, and is logistically impossible. The State explains in its brief that "even a person who is temporarily at a location with a different address from the one at which he or she is registered is required to notify the sheriff of that change no later than the tenth day after the address change." If any change in location triggered an address change, then

every registrant would be under a continuing obligation to re-register her address every ten days unless she never left her registered address. Each time a registrant left her address to go to work or to the post office or to the grocery store, she would trigger an address change, which in turn would trigger a new registration requirement. A prudent registrant would register her address as the sheriff's office and return every ten days to submit a new registration form stating her address as the sheriff's office. Registering a registrant's location every ten days does not further the statute's purpose of increasing the reliability of information about registered sex offenders because the only information available is a series of snapshots of a registrant's location every ten days.[3] Furthermore, it appears from the limited cases previously before this Court that law enforcement agencies do not enforce the Registration Program in this manner and instead expect registrants to register their "home address" as stated in N.C. Gen. Stat. § 14-208.7(b)(1). The General Assembly has resolved these problems for certain registrants by requiring them to wear Global Positioning System monitors, which use satellites to track registrants' locations through time and space. *See* N.C. Gen. Stat. §§ 14-208.40, 14-208.40A (2007) (establishing a satellite-based monitoring system for registrants who are sexually violent predators, recidivists, convicted of aggravated offenses, or have "committed an offense involving the physical, mental, or sexual abuse of a minor" and "require[] the highest possible level of supervision and monitoring").

Returning to the case at bar, with a definition of "home address" in hand, we hold that the State did not present substantial evidence that defendant changed her address between 30 August 2006 and 4 September 2006 as alleged in the indictment. We view the evidence "in the light most favorable to the State, giving the State the benefit of every reasonable inference to be drawn therefrom." *State v. Denny*, 361 N.C. 662, 665, 652 S.E.2d 212, 213 (2007) (quotations and citations omitted). Nevertheless, the State presented no evidence that defendant stopped receiving mail or other communications at Gragg Price Lane between 30 August 2006 and 4 September 2006. According to defendant's statement, she still received her mail at Gragg Price Lane and either picked up the mail herself or had Price bring her the mail. During direct examination by the State, Price testified that defendant received her mail at Gragg Price Lane during that time, and that defendant came by the house to collect it.

---

3. See *People v. North*, 112 Cal. App. 4th 621 (2003), for a more complete discussion of the logistical problems posed by requiring registrants to register their "locations."

The State also did not present substantial evidence that defendant had stopped residing at Gragg Price Lane between 30 August 2006 and 4 September 2006 and started residing at Poovey Drive. The only evidence that the State offered on this matter was Officer Barlowe's testimony about what Price and defendant's father had told him. Officer Barlowe testified that, on 18 September 2006, Price told him that defendant went to stay with her father two or three weeks earlier. Officer Barlowe also testified that, on 18 September 2006, Robert Abshire told him that defendant had been staying at Poovey Drive for about two weeks. The State offered an undated note written by Robert Abshire saying that defendant had stayed at Poovey Drive "for · the past 5-6 weeks," but never established when the note was written or that defendant began her stay at Poovey Drive between 30 August 2006 and 4 September 2006. The State also offered defendant's criminal complaint in which she listed her address as Poovey Drive. However, the complaint is dated 18 September 2006 and does not support a finding that defendant resided at Poovey Drive before 18 September 2006 or took up a residence there between 30 August 2006 and 4 September 2006.

The State did not present evidence of any other indicia that defendant had changed her residence. It did not show, for example, that defendant had removed her personal belongings from Gragg Price Lane to Poovey Drive. Instead, defendant testified that she left all of her personal belongings at Gragg Price Lane, including her pets, and that she returned each day to retrieve new clothing for herself and her children and to feed her animals. She testified that she never packed a suitcase. The State did not show that defendant stopped sleeping at Gragg Price Lane. According to the State's evidence, defendant slept at Gragg Price Lane twice after the alleged address change. The State did not show that defendant stopped holding out Gragg Price Lane to the public as her address. The State's only evidence that defendant held out a different address to the public was her criminal complaint, which was dated and filed well after the alleged change of address occurred. To present substantial evidence that a defendant has changed her address within the meaning of N.C. Gen. Stat. § 14-208.11, the State need not necessarily show that the defendant removed her personal belongings from a particular address, stopped sleeping at a particular address, or stopped holding out to the public a particular address as her own; however, in this case, something more was needed.

IV. Conclusion

For the reasons stated above, we hold that the trial court erred by denying defendant's motion to dismiss and we vacate defendant's conviction.

Vacated.

Judge STROUD concurs.

Judge HUNTER dissents by separate opinion.

HUNTER, Judge, dissenting.

I agree with the majority that the trial court had subject matter jurisdiction to hear the case. I disagree, however, with the majority's conclusion that the trial court erred in denying Patricia Dawn Abshire's ("defendant") motion to dismiss. Instead, I would hold that there was sufficient evidence to convict defendant under N.C. Gen. Stat. § 14-208.11 (2005), requiring registration of sex offenders, and would therefore find no error.

As the majority correctly notes, in considering a trial court's denial of a motion to dismiss on the basis of insufficient evidence, " 'we consider the evidence in the light most favorable to the State, with all favorable inferences. We disregard defendant's evidence except to the extent it favors or clarifies the State's case.' " *State v. Hinkle*, 189 N.C. App. 762, 766, 659 S.E.2d 34, 36 (2008) (citation omitted). In ruling on a motion to dismiss, " 'the trial court must determine only whether there is substantial evidence of each essential element of the offense charged and of the defendant being the perpetrator of the offense.' " *Id.* at ——, 659 S.E.2d at 36-37 (citation omitted). Substantial evidence is defined as " 'evidence which a reasonable mind might accept as adequate to support a conclusion.' " *Id.* at 766, 659 S.E.2d at 37 (citation omitted).

I agree with the majority that there are three essential elements for the crime of failing to register a "change of address" under N.C. Gen. Stat. § 14-208.11. Those elements are that (1) the defendant is a "[a] person required . . . to register," (2) the defendant "change[s his or her] address," N.C. Gen. Stat. § 14-208.11, and (3) the defendant fails to "provide written notice of the new address not later than the tenth day after the change to the sheriff of the county with whom

the person had last registered." N.C. Gen. Stat. § 14-208.9(a) (2005). In the instant case, defendant only argues that she did not "change [her] address" in order to trigger a violation.

The majority defines "address" for purposes of the Registration Program, "as a place where a registrant resides and where that registrant receives mail or other communication."[4] I do not read the statute so narrowly.

"The purpose of the Article is to prevent recidivism because 'sex offenders often pose a high risk of engaging in sex offenses even after being released from incarceration or commitment and . . . protection of the public from sex offenders is of paramount governmental interest.' " *State v. Sakobie*, 165 N.C. App. 447, 450, 598 S.E.2d 615, 617 (2004) (quoting N.C. Gen. Stat. § 14-208.5 (2003)). An additional purpose of the registry requirement is to assist "law enforcement officers' efforts to protect communities, conduct investigations, and quickly apprehend offenders who commit [a] sex offense[]" by providing information as to where the registrant resides. N.C. Gen. Stat. § 14.208.5 (2005). Under the majority's definition, a person required to register could easily thwart these purposes by receiving his or her mail at a post office box. Instead, I would define "address" as the place where the person is actually living, whether temporary or permanent.

This definition of "address" is consistent with our Supreme Court's definition of residence. *Hall v. Board of Elections*, 280 N.C. 600, 187 S.E.2d 52 (1972). When distinguishing domicile and residence, the Court held:

> Residence simply indicates a person's actual place of abode, whether permanent or temporary. Domicile denotes one's permanent, established home as distinguished from a temporary, although actual, place of residence. When absent therefrom, it is the place to which he intends to return (*animus revertendi*); it is the place where he intends to remain permanently, or for an indefinite length of time, or until some unexpected event shall occur to induce him to leave (*animus manendi*).

---

4. In determining that the State had not presented sufficient evidence, the majority relies, in part, on defendant's testimony. As the majority quotes in its opinion and as I have quoted here, defendant's evidence is disregarded " 'except to the extent it favors or clarifies the State's case.' " *Hinkle*, —— N.C. App. at ——, 659 S.E.2d at 36 (citation omitted). Accordingly, the majority has incorrectly applied the standard of review in this case.

*Id.* at 605, 187 S.E.2d at 55. Thus, to serve the purpose intended by the sex offender registration statute, when a person required to register changes residence, even temporarily, that new address is the person's official "address" which must be registered with the State. Even if defendant in the case at bar was not changing her domicile permanently to her parents' home, there was sufficient evidence that she changed her residence such that a reasonable jury could find she was required to change her address in accordance with the statute.

Furthermore, I find support for such a definition in the Act's treatment of non-resident students and for non-resident workers. These classifications of offenders are defined as persons who are not residents of North Carolina and are here for a specific purpose, yet they must register pursuant to N.C. Gen. Stat. § 14-208.7(a)(1). In either situation, it is immaterial as to where the registrant is receiving mail or other communications. Instead, registration is required because the individual will be living in North Carolina for at least some period of time. Thus, the question is whether defendant in this case, was living at her parents' home and failed to register this change. I would hold that the State provided sufficient evidence that defendant had in fact began living at her parents' home and failed to register.

The State presented evidence tending to show that defendant was living at her parents' home in Granite Falls, North Carolina, and not at her registered address in Hudson, North Carolina. Indeed, Ross Price, with whom defendant had been living prior to her move to the unregistered address, indicated that defendant had not been living with him for three weeks and he did not know where she was. Mr. Price also informed Detective Barlowe that as of 18 September 2006, defendant had been gone from his residence for approximately two to three weeks but may have stayed there a night. Although defendant testified that she kept her own phone line at the Price residence, Mr. Price testified that he suspected defendant had visited his place after she began living with her parents to help him with his phone bill.

Moreover, defendant's father, Robert Abshire, provided a note on defendant's behalf that defendant gave to Detective Barlowe when she was arrested. The note indicated that defendant had been staying at Mr. Abshire's home for five to six weeks prior to her arrest. Additionally, there was evidence defendant completed an affidavit on 18 September 2006 to have charges taken out against her brother for an assault in which she listed her parents' address in Granite Falls as her residence.

This evidence, and the fact that defendant admitted she had only spent two nights at the residence of Mr. Price, support a reasonable inference that defendant changed her address thereby triggering the requirement to notify the sheriff of her new address. Accordingly, I would hold that the trial court did not err in denying defendant's motion to dismiss and would reject defendant's assignments of error.