STATE OF NORTH CAROLINA v. PATRICIA DAWN ABSHIRE

No. 459A08

(Filed 18 June 2009)

## Sexual Offenses— sex offenders—registration—temporary move

The State presented sufficient evidence that a convicted sex offender changed her address so as to trigger reporting requirements where defendant was living with her father at another address in the county when a social worker attempted to locate her, but she had maintained connections with the registered

## STATE v. ABSHIRE

[363 N.C. 322 (2009)]

address and stated that she thought of the registered address as home and intended to return. Provisions of the registration program demonstrate the legislature's clear intent that even a temporary "home address" must be registered so that law enforcement authorities and the general public know the whereabouts of sex offenders.

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 192 N.C. App. ——, 666 S.E.2d 657 (2008), vacating a judgment entered 28 February 2007 by Judge Nathaniel J. Poovey in Superior Court, Caldwell County, following a jury verdict finding defendant guilty of failing to comply with the sex offender registration law. On 11 December 2008, the Supreme Court allowed the State's petition for discretionary review of additional issues. Heard in the Supreme Court 31 March 2009.

*Roy Cooper, Attorney General, by J. Joy Strickland, Assistant Attorney General, for the State-appellant.*

*James N. Freeman, Jr. for defendant-appellee.*

BRADY, Justice.

The sole issue before the Court is whether the State presented sufficient evidence that convicted sex offender Patricia Dawn Abshire (defendant) changed her address so as to trigger the reporting requirements of North Carolina's Sex Offender and Public Protection Registration Program (registration program). *See* N.C.G.S. §§ 14-208.7, -208.9, -208.11 (2005).[1] In response to the threat to public safety posed by the recidivist tendencies of convicted sex offenders, "North Carolina, like every other state in the nation, enacted a sex offender registration program to protect the public." *State v. Bryant,* 359 N.C. 554, 555, 614 S.E.2d 479, 480 (2005) (citations omitted); *see also Standley v. Town of Woodfin,* 362 N.C. 328, 333, 661 S.E.2d 728, 731 (2008) (discussing recidivism rates among sex offenders). The registration program contained in Part 2 of Article 27A, Chapter 14 of our General Statutes requires certain sex offenders with "reportable conviction[s]" to submit a registration form listing personal information, including the sex offender's "home address," to the sheriff of

---

1. Certain amendments to the registration program found at Article 27A, Chapter 14 of our General Statutes became effective 1 December 2006, 1 June 2007, and 30 August 2007. We must analyze the case *sub judice* under the 2005 version of the statutes since defendant's offense occurred before these amendments became effective.

the county in which the "person resides" and to notify the sheriff of any subsequent change of address. N.C.G.S. §§ 14-208.7(a),(b), -208.9(a). In the case *sub judice*, we conclude that the State presented sufficient evidence that defendant changed her address and failed to comply with the requirements of the registration program.

## FACTUAL AND PROCEDURAL BACKGROUND

### Defendant's Status as a Convicted Sex Offender Prior to the Case *Sub Judice*

On 19 January 1999, the Caldwell County Grand Jury returned true bills of indictment charging defendant with four counts of rape of a child at least six years younger than defendant under N.C.G.S. § 14-27.7A(a) and four counts of taking indecent liberties with a child under N.C.G.S. § 14-202.1. The indictments describe four acts of vaginal intercourse occurring in June 1998 between defendant, who was twenty years of age at the time, and a thirteen year old boy. Pursuant to a plea agreement, on 27 March 2000, defendant pleaded guilty to four counts of taking indecent liberties with a child and the four counts of rape were dismissed.

As a result of her guilty pleas and corresponding convictions, defendant was obligated to register as a sex offender. According to the North Carolina Sex Offender and Public Protection Registry website, defendant first reported her home address to the sheriff of her county on 30 October 2001.[2] After her initial registration but before being indicted for the present charge, defendant reported thirteen changes of address under subsections 14-208.9(a) and 14-208.11(a)(2) of the registration program. Those subsections require under the threat of criminal liability that "[i]f a person required to register changes address, the person shall provide written notice of the new address not later than the tenth day after the change to the sheriff of the county with whom the person had last registered." *Id.* § 14-208.9(a).

### Defendant's Actions Leading to the Case *Sub Judice*

At defendant's trial for failing to comply with the sex offender registration program, the State presented evidence that tended to show the following: On 19 July 2006, defendant notified the Caldwell County Sheriff's Office of a change of address. She listed her new

---

2. Information regarding convicted sex offenders is available via the Internet. North Carolina Offender Registry, http://sexoffender.ncdoj.gov/ (last visited May 21, 2009).

address as 3410 Gragg Price Lane, Hudson, North Carolina, in Caldwell County, and showed her old address as 2155 White Pine Drive; number 9, Granite Falls, North Carolina, also in Caldwell County. In September 2006 officials at the school attended by defendant's two children became concerned about the number of times the children arrived late or missed the entire day. Consequently, in early September 2006, Gwen Laws, a social worker employed by the Caldwell County Schools, attempted to locate defendant at her Granite Falls address to discuss the children's tardiness. After failing to find defendant at that address, Laws searched the State-maintained website that informs the public of the addresses of convicted sex offenders. After learning that the address listed for defendant was 3410 Gragg Price Lane, Laws visited that address on 11 September 2006 and spoke with Ross Lee Price, who owned and resided at the property. Laws testified that when she inquired whether defendant lived there, Price said, "Hell no," and explained that although defendant was "in and out" of the residence and received United States Postal Service mail there, she had not "lived there in three weeks." Price told Laws that he was unsure where defendant was living at the time. After this futile attempt to locate defendant, Laws inquired of the Caldwell County Sheriff's Office to determine whether law enforcement knew of a different address for defendant.

Detective Aaron Barlowe of the Caldwell County Sheriff's Office learned of Laws's unsuccessful attempts to locate defendant in September 2006, and he began an investigation. At trial, Detective Barlowe testified that on 18 September 2006, he visited 3410 Gragg Price Lane and spoke with Price. Price told Detective Barlowe that defendant was in a dating relationship with his son at the time. Price informed Detective Barlowe that defendant "got mad a couple of weeks ago and went to go stay with her father." Price believed that defendant was planning on moving back to the residence, though he did not know when, and he indicated that defendant had been gone for two or three weeks, "but might have stayed a night" during that time. After speaking with Price, Detective Barlowe went to the residence of Robert and Ruth Abshire at 5739 Poovey Drive, Granite Falls, North Carolina. Mr. Abshire, defendant's father, indicated that defendant had been staying at his home for about two weeks. Based on his conversations with Price and defendant's father, Detective Barlowe obtained a warrant for defendant's arrest for violating the reporting requirements of the sex offender registration program.

Additionally on 18 September 2006, defendant filed a "Criminal Complaint and Request for Process" in Caldwell County against her brother. She alleged that on 13 September 2006, her brother began "punching" her "in the face" and elsewhere after she attempted to stop her brother from beating his ex-girlfriend. Defendant listed 5739 Poovey Drive, Granite Falls, North Carolina, as her address on the complaint. The State presented a copy of the complaint at trial as evidence that defendant had changed her address.

Pursuant to a warrant, defendant was arrested on 19 September 2006 for failure to register as a sex offender under N.C.G.S. § 14-208.11. After arrest, defendant submitted the following statement to law enforcement:

> About 10 days after I filed the breaking and entering report when my house was broken into and my daughter's computer was stolen I went to stay with my father at 5739 Poovey Drive. I decided that if I went to stay with my dad for a week or two, I could get my emotions together. I told Ross that I was going to stay with my dad so I could get my self emotionally stable and I would come back home. I was planning on going back home this past weekend but I was attacked by my brother and I decided to stay with my dad for a little bit longer. I am moving back into the house on Friday after her [sic] girls are out of school. I still received my mail at 3410 Gragg Price Lane[.] I would pick the mail up or Ross would bring me my mail about twice a week. I went back and stayed the night on the 9th and 14th of September. I was not planning n [sic] moving from the house but only staying for a week or two with my father.

At the time of her arrest defendant also gave Detective Barlowe a note from her father that stated: "To Whom it may Concern, Patricia has staye [sic] at my home for the past 5-6 weeks. During that time she would go to Ross's Houses [sic] and stay once every 7-10 day's [sic] [.]" The reference to Ross indicated the Price residence at 3410 Gragg Price Lane.

On 23 October 2006, a Caldwell County Grand Jury returned a true bill of indictment charging defendant with failing to comply with sex offender registration in violation of N.C.G.S. § 14-208.11. The indictment alleged defendant changed her address on or about 30 August to 4 September 2006, and the date of the offense was recorded as on or about 14 to 18 September 2006. Defendant was tried by a jury in Superior Court, Caldwell County, on 27 and 28 February 2007. At

the close of the State's evidence, defendant moved to dismiss the charge on grounds that the State failed to present sufficient evidence. The trial court denied defendant's motion, and the trial proceeded to defendant's evidence.

According to defendant's testimony, someone broke into the residence at 3410 Gragg Price Lane and stole her daughters' computer on 19 August 2006. Approximately ten days later she began staying at her father's residence on Poovey Drive "[o]ff and on over about a three week period." She testified that "almost everyday" she still visited Gragg Price Lane to care for her pets, wash clothes, or "hang out." Defendant testified that Price was "grouchy," so she tried to avoid him by visiting Gragg Price Lane during the day, although she stayed the night there on 9 September and 14 September 2006. Defendant stated that she maintained a private telephone line at Gragg Price Lane, never moved her belongings, and considered it her "home" during the time she stayed at her father's residence.

At the close of all the evidence, defendant again moved to dismiss the charge for insufficient evidence. The trial court denied the motion and instructed the jury on the charge. After deliberations, the jury returned a verdict of guilty. Defendant was sentenced to a minimum term of thirteen months to a maximum term of sixteen months. Defendant's sentence was then suspended, and she was placed on supervised probation for eighteen months. Defendant appealed.

On 16 September 2008, a divided panel at the Court of Appeals vacated defendant's conviction and held that the State failed to present sufficient evidence that defendant had changed her address. *State v. Abshire,* —— N.C. App. ——, ——, 666 S.E.2d 657, 664-65 (2008). The dissenting judge concluded that there was sufficient evidence, *id.* at ——, 666 S.E.2d at 665 (Hunter, Robert C., J., dissenting), and the State appealed to this Court based on the dissent. On 6 October 2008, we allowed the State's motion for a temporary stay, and on 11 December 2008, we allowed the State's petitions for Writ of Supersedeas and for discretionary review as to additional issues.[3]

## ANALYSIS

When reviewing a defendant's motion to dismiss a charge on the basis of insufficiency of the evidence, this Court determines

---

3. Because we reverse the Court of Appeals based on the issue presented as the basis for the dissenting opinion, it is unnecessary for us to consider the additional issue presented by the State of whether the Court of Appeals majority used an improper standard for ruling on defendant's motion to dismiss.

"whether the State presented 'substantial evidence' in support of each element of the charged offense." *State v. Chapman*, 359 N.C. 328, 374, 611 S.E.2d 794, 827 (2005); *see also State v. McNeil*, 359 N.C. 800, 803-04, 617 S.E.2d 271, 273-74 (2005) (citations omitted); *State v. Garcia*, 358 N.C. 382, 412, 597 S.E.2d 724, 746 (2004), *cert. denied*, 543 U.S. 1156 (2005). " ' "Substantial evidence" is relevant evidence that a reasonable person might accept as adequate, or would consider necessary to support a particular conclusion.' " *McNeil*, 359 N.C. at 804, 617 S.E.2d at 274 (quoting *Garcia*, 358 N.C. at 412, 597 S.E.2d at 746 (citations omitted)). In this determination, all evidence is considered " 'in the light most favorable to the State, and the State receives the benefit of every reasonable inference supported by that evidence.' " *Id.* (quoting *Garcia*, 358 N.C. at 412-13, 597 S.E.2d at 746 (citation omitted)). "The defendant's evidence, unless favorable to the State, is not to be taken into consideration," *State v. Jones*, 280 N.C. 60, 66, 184 S.E.2d 862, 866 (1971), except "when it is consistent with the State's evidence, the defendant's evidence 'may be used to explain or clarify that offered by the State,' " *State v. Denny*, 361 N.C. 662, 665, 652 S.E.2d 212, 213 (2007) (quoting *Jones*, 280 N.C. at 66, 184 S.E.2d at 866 (citation omitted)). Additionally, a " ' "substantial evidence" inquiry examines the sufficiency of the evidence presented *but not its weight*,' " which is a matter for the jury. *McNeil*, 359 N.C. at 804, 617 S.E.2d at 274 (emphasis added) (quoting *Garcia*, 358 N.C. at 412, 597 S.E.2d at 746 (citation omitted)); *State v. Blake*, 319 N.C. 599, 604, 356 S.E.2d 352, 355 (1987) (citation omitted). Thus, "if there is substantial evidence—whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *McNeil*, 359 N.C. at 804, 617 S.E.2d at 274 (brackets, citations, and quotation marks omitted).

The crime of failing to notify the appropriate sheriff of a sex offender's change of address under N.C.G.S. § 14-208.11(a) is a strict liability offense. *See Bryant*, 359 N.C. at 562, 614 S.E.2d at 484. The crime contains three essential elements: (1) the defendant is a "person required . . . to register," N.C.G.S. § 14-208.11(a); (2) the defendant "change[s]" his or her "address," *id.* § 14-208.11(a)(2); and (3) the defendant "[f]ails to notify the last registering sheriff of [the] change of address," *id.*, "not later than the tenth day after the change," N.C.G.S. § 14-208.9(a). Here, defendant only challenges the second element and argues that she did not change her address.

## The Definition of "Address" under the Registration Program

Before determining whether the State presented substantial evidence to show that defendant changed her address, we must ascertain the definition of "address" as used in subsections 14-208.9(a) and 14-208.11(a)(2) of the registration program. At the outset, we note that the statute describes a change of address as a discrete event and not as a nebulous process. The statute indicates that once "a person required to register changes address," the person must notify the appropriate sheriff of the change within ten days. *Id.* § 14-208.9(a). With this in mind, we turn to the definition of address.

The word "address" is not explicitly defined by statute. Section 14-208.6 contains numerous definitions of terms utilized in Article 27A, but there is no definition for the words "address" or "change of address." *Id.* § 14-208.6 (2005). " 'Nothing else appearing, the Legislature is presumed to have used the words of a statute to convey their natural and ordinary meaning.' In the absence of a contextual definition, courts may look to dictionaries to determine the ordinary meaning of words within a statute." *Perkins v. Ark. Trucking Servs., Inc.*, 351 N.C. 634, 638, 528 S.E.2d 902, 904 (2000) (citations omitted)). The noun "address" has the following ordinary meaning: "A description of the location of a person . . . . The location at which a particular organization or person may be found or reached . . . ." *The American Heritage Dictionary of the English Language* 20 (4th ed. 2000). Another dictionary defines the noun "address" as "the particulars of the place where someone lives." *The New Oxford American Dictionary* 18 (2d ed. 2005).

Before applying this definition, we are mindful that the word is set within the context of the registration program and this context may further clarify any ambiguity surrounding the word. During deliberations at trial, jurors sent a note asking the judge whether they could "see [a] copy of [the] law stating what constitutes a residence in regards to sex offenders." In response, the trial judge noted to counsel that the phrase "change of address" in subsection 14-208.11(a)(2) is "definitely ambiguous" on its face. The trial judge chose to instruct the jurors that they were to "use the ordinary meanings that these words have as commonly used in the English language." Our method of statutory construction dictates that:

When the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not

required. However, when the language of a statute is ambiguous, this Court will determine the purpose of the statute and the intent of the legislature in its enactment.

*Diaz v. Div. of Soc. Servs.*, 360 N.C. 384, 387, 628 S.E.2d 1, 3 (2006) (citations omitted). To whatever degree the meaning of "address" may be ambiguous, we refer to the purpose of the statute and the intent of the legislature in order to derive an appropriate interpretation.

"The best indicia of [the legislature's] intent are the language of the statute or ordinance, the spirit of the act and what the act seeks to accomplish." *Coastal Ready-Mix Concrete Co. v. Bd. of Comm'rs of Town of Nags Head*, 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980) (citations omitted), *quoted in Diaz*, 360 N.C. at 387, 628 S.E.2d at 3. Moreover, "[i]n discerning the intent of the General Assembly, statutes *in pari materia* should be construed together and harmonized whenever possible." *State v. Jones*, 359 N.C. 832, 836, 616 S.E.2d 496, 498 (2005) (citation omitted).

The registration program was designed to assist law enforcement agencies and the public in knowing the whereabouts of sex offenders and in locating them when necessary. The legislature "recognize[d] that sex offenders often pose a high risk of engaging in sex offenses even after being released from incarceration or commitment and that protection of the public from sex offenders is of paramount governmental interest." N.C.G.S. § 14-208.5 (2005). Furthermore, this Court has recognized "the twin aims" of the registration program to be "public safety and protection." *Bryant*, 359 N.C. at 560, 614 S.E.2d at 483.

The Court of Appeals opined that a sex offender's "home address" is "a place where a registrant resides and where that registrant receives mail or other communication." *Abshire*, —— N.C. App. at ——, 666 S.E.2d at 663 (majority). This interpretation, however, would thwart the intent of the legislature if a sex offender were allowed to actually live at a location other than where he or she was registered and not be required to notify the sheriff of that new address as long as he or she continued to receive United States Postal Service mail at the registered address. Such a result would enable sex offenders to elude accountability from law enforcement and would expose the public to an unacceptable level of risk.

We conclude that the legislature intended the definition of address under the registration program to carry an ordinary meaning of

describing or indicating the location where someone lives. As such, the word indicates what this Court has considered to be a person's residence. For instance, this Court noted in *Hall v. Wake County Board of Elections* that "[r]esidence simply indicates a person's actual place of abode, whether permanent or temporary." 280 N.C. 600, 605, 187 S.E.2d 52, 55 (1972); *see also Black's Law Dictionary* 1335 (8th ed. 2004) (defining "residence" as: "1. The act or fact of living in a given place for some time . . . . 2. The place where one actually lives . . . . *Residence* usu. just means bodily presence as an inhabitant in a given place . . . ."). Thus, a sex offender's address indicates his or her residence, meaning the actual place of abode where he or she lives, whether permanent or temporary. Notably, a person's residence is distinguishable from a person's domicile. *See Hall*, 280 N.C. at 605, 187 S.E.2d at 55. Domicile is a legal term of art that "denotes one's permanent, established home," whereas a person's residence may be only a "temporary, although actual," "place of abode." *Id.*

Defining "address" in terms of indicating a person's residence is consistent with other provisions of the registration program. For instance, section 14-208.7 specifies the information collected on registration forms submitted by sex offenders. Among other details, the form requires a "home address." N.C.G.S. § 14-208.7(b)(1). The addition of the adjective "home" indicates that the address is a physical location, precluding the possibility of listing a postal box. Furthermore, section 14-208.7 pertains to sex offenders who come to North Carolina from out of state to study or work. *Id.* § 14-208.7(a1). These students and workers are required to register and provide a "home address" within North Carolina, as well as provide an address in the state from which they came. *Id.* § 14-208.7(a1), (b)(1). These provisions demonstrate the legislature's clear intent that even a *temporary* "home address" must be registered so that law enforcement authorities and the general public know the whereabouts of sex offenders in our state.

Additionally, the statutory provision requiring that a sex offender's registered information be verified annually, *id.* § 14-208.9A(1) (2005), simply requires that a sex offender's address be at a location where he or she can receive a "nonforwardable verification form" via the United States Postal Service. This form can be sent to even a temporary residence that is registered. Subsection 14-208.9A(1) uses the word "address" to refer to a mailing address, but considering the overarching purpose of the registration program and the inclusion of the adjective "home" with "address" in subsection 14-208.7(b)(1)

demonstrates that understanding "address" to mean a mailing address alone is insufficient for the registration program.

Finally, defining "address" as indicating a sex offender's residence is consistent with the distinction the legislature recognized between mere presence at a location and establishing a residence. Subsection 14-208.7(a) requires registration for sex offenders moving to North Carolina "within 10 days of *establishing residence*," while sex offenders who simply visit our State must register "whenever [they have] been *present* in the State for 15 days." *Id.* § 14-208.7(a) (emphasis added). Thus, reading the statutes *in pari materia* leads to the conclusion that mere physical presence at a location is not the same as establishing a residence. Determining that a place is a person's residence suggests that certain activities of life occur at the particular location. Beyond mere physical presence, activities possibly indicative of a person's place of residence are numerous and diverse, and there are a multitude of facts a jury might look to when answering whether a sex offender has changed his or her address. Adding any further nuance to the definition is unnecessary at this time.

Before applying these principles to the facts of this case, we note that defendant argues the rule of lenity compels us to rule in her favor. We disagree. The rule of lenity requires that we strictly construe ambiguous criminal statutes. *State v. Hinton*, 361 N.C. 207, 211, 639 S.E.2d 437, 440 (2007) (citations omitted). However, construing the word "address" in terms of indicating defendant's residence is not a liberal reading in favor of the State; rather, it is the only plausible reading that comports with the legislative purpose in enacting the registration program.

### Sufficient Evidence Defendant Changed Her Address

Having interpreted the statutes to determine the meaning of the term "address," we now examine whether the State presented sufficient evidence that defendant changed her address to trigger the reporting requirement. In her statement to Detective Barlowe on 19 September 2006, defendant indicated that around the end of August 2006 she "went to stay with [her] father at 5739 Poovey Drive" and "decided that if [she] went to stay with [her] dad for a week or two, [she] could get [her] emotions together." From this statement, the jury could reasonably infer that defendant was indicating a change in her actual place of abode, even for just a temporary period, from Gragg Price Lane to Poovey Drive. Although defendant's statement also mentioned that she "stayed the night on the 9th and 14th of

September" at Gragg Price Lane and still received mail there, the jury could have reasonably concluded that those details were ancillary to defendant's actual place of abode on Poovey Drive. The note Detective Barlowe received from defendant's father upon defendant's arrest on 19 September 2006 stated defendant had stayed at her father's "home for the past 5-6 weeks," and this included spending the night there according to her father's testimony at trial. The jury could have reasonably inferred that spending the night at her father's house for this amount of time, or for even a shorter duration, indicated that defendant carried out the core necessities of daily living at Gragg Price Lane and that she had made her father's residence her own for that period of time.

Additionally, Gwen Laws, the social worker from the Caldwell County Schools, testified that on 11 September 2006, Price told her that, "Hell no," defendant did not live at Gragg Price Lane and had not "lived there in three weeks." Price told Laws that he did not know where defendant was living at the time. The jury could reasonably infer that had Gragg Price Lane been defendant's residence at the time, then Price, who owned and occupied the house, would have known defendant was residing there. Price also informed Detective Barlowe on 18 September 2006 that defendant had been away from Gragg Price Lane for a span of two to three weeks, except for possibly spending one night during that time. Finally, defendant held out her address to be 5739 Poovey Drive on 18 September 2006, when she filed a "Criminal Complaint and Request for Process" against her brother. Thus, defendant's own representation may have supported the inference jurors made that defendant's address changed to the Poovey Drive residence beginning around the end of August and continued, at least, through the filing of the complaint against her brother.

When this evidence is viewed in the light most favorable to the State, and when the State is afforded the benefit of every reasonable inference supported by that evidence, we conclude that the State presented sufficient evidence that defendant changed her address to withstand defendant's motion to dismiss.

For the foregoing reasons, we conclude that the trial court properly denied defendant's motions to dismiss, and we reverse the Court of Appeals.

REVERSED; DISCRETIONARY REVIEW IMPROVIDENTLY ALLOWED.