DAVIS, Judge.
 

 *239
 
 James David Williams ("Defendant") appeals from his conviction for unlawfully entering property operated as a domestic violence safe house or haven by a person subject to a protective order in violation of N.C. Gen.Stat. § 50B-4.1(g1). On appeal, he contends that the trial court erred in denying his motions to dismiss because there was no evidence
 
 *240
 
 presented at trial that he actually entered the domestic violence shelter at issue. After careful review, we conclude that Defendant received a fair trial free from error.
 

 Factual Background
 

 The State presented evidence at trial tending to establish the following facts: Defendant and Dawn Triplett ("Triplett") were involved in a romantic relationship and lived together in Glen Alpine, North Carolina from December 2013 to July 2014. In April 2014, their relationship began to deteriorate, and on 7 July 2014 a physical altercation occurred during which Defendant pointed a pellet gun at Triplett, pushed her onto a bed, and "threatened to bust [her] head." Defendant
 
 *233
 
 then forced Triplett to go outside and get into the driver's seat of his car at which point he "put a cinderblock up against the driver's side so [she] couldn't get out." When Triplett attempted to exit the car through the passenger-side door, Defendant grabbed her by the throat and verbally berated her. A neighbor who witnessed the altercation called the Glen Alpine Police Department, and officers responded to the scene. Triplett related to the officers the events that had transpired, and Defendant was placed under arrest for assault on a female.
 

 On 18 July 2014, Triplett moved into Options Domestic Violence Shelter ("Options"), a safe house for women who are victims of domestic violence and other violent crimes. That same day, Triplett filed a petition for a domestic violence protective order ("DVPO") in Burke County District Court. On 1 August 2014, the Honorable Clifton Smith issued a DVPO preventing Defendant from having any contact with Triplett and further ordering Defendant to "stay away from [Triplett's] residence or any place where [Triplett] receives temporary shelter."
 

 At approximately 6:45 a.m. on 8 August 2014, Defendant drove to the address at which Options was located and parked his car in the parking lot. He exited his vehicle and walked to the front door of the Options building. Defendant attempted to open the door by pulling on the door handle only to discover that it was locked. Defendant then returned to his vehicle and left the premises.
 

 Defendant's presence on the front porch and his attempt to open the door were captured by a surveillance camera that was being monitored at the time by Jessica Dolinger ("Dolinger"), an Options employee. After Defendant's departure, Dolinger and other Options personnel discovered Defendant's identity and contacted law enforcement officers. Defendant was arrested later that day.
 

 *241
 
 On 8 September 2014, Defendant was indicted on charges of (1) violating N.C. Gen.Stat. § 50B-4.1(g1) ; and (2) attaining the status of an habitual felon. A superseding indictment on the habitual felon charge was issued on 5 January 2015. A jury trial was held before the Honorable Joseph N. Crosswhite in Burke County Superior Court beginning on 6 April 2015. Both at the conclusion of the State's evidence and at the close of all the evidence, Defendant moved to dismiss the charge arising under N.C. Gen.Stat. § 50B-4.1(g1) based on insufficiency of the evidence. The trial court denied both motions.
 

 The jury found Defendant guilty of violating N.C. Gen.Stat. § 50B-4.1(g1), and Defendant subsequently pled guilty to the habitual felon charge. The trial court consolidated Defendant's convictions and sentenced him to 78-106 months imprisonment. Defendant gave oral notice of appeal in open court.
 

 Analysis
 

 On appeal, Defendant argues that the trial court erred in denying his motions to dismiss based on his contention that in order for him to have been lawfully convicted of violating N.C. Gen.Stat. § 50B-4.1(g1) the State was required to prove that he actually entered the Options
 
 building.
 
 The State, conversely, contends that a violation of the statute occurred as soon as Defendant set foot onto the real property upon which the shelter was situated.
 

 The trial court's denial of a motion to dismiss is reviewed
 
 de novo
 
 on appeal. Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.
 

 State v. Pressley,
 

 235 N.C.App. 613
 
 , 616,
 
 762 S.E.2d 374
 
 , 376 (internal citations and quotation marks omitted),
 
 disc. review denied,
 

 367 N.C. 829
 
 ,
 
 763 S.E.2d 382
 
 (2014).
 

 N.C. Gen.Stat. § 50B-4.1(g1) is contained within the North Carolina Domestic Violence Act ("the Domestic Violence Act").
 
 See
 

 Comstock v. Comstock,
 
 ---N.C.App. ----, ----,
 
 780 S.E.2d 183
 
 , 185 (2015) ("The issuance and renewal of DVPOs, the means for enforcing them, and the penalties for their violation are governed by North Carolina's Domestic Violence Act, which is codified in Chapter 50B of the North Carolina
 
 *242
 
 General
 
 *234
 
 Statutes."). N.C. Gen.Stat. § 50B-4.1 (g1) states, in pertinent part, as follows:
 

 Unless covered under some other provision of law providing greater punishment, any person who is subject to a valid protective order ... who enters
 
 property
 
 operated as a safe house or haven for victims of domestic violence, where a person protected under the order is residing, shall be guilty of a Class H felony. A person violates this subsection regardless of whether the person protected under the order is present on the property.
 

 N.C. Gen.Stat. § 50B-4.1(g1) (2015) (emphasis added).
 

 The term "property" is not defined in N.C. Gen.Stat. § 50B-4.1. However, our Supreme Court has held that "[n]othing else appearing, the Legislature is presumed to have used the words of a statute to convey their natural and ordinary meaning. In the absence of a contextual definition, courts may look to dictionaries to determine the ordinary meaning of words within a statute."
 
 State v. Abshire,
 

 363 N.C. 322
 
 , 329,
 
 677 S.E.2d 444
 
 , 449 (2009) (citation and quotation marks omitted).
 

 Webster's New World College Dictionary defines property, in pertinent part, as "the right to possess, use, and dispose of something; ownership
 
 [property in land
 
 ]I ... a thing or things owned; possessions collectively; esp., land or real estate owned[.]"
 
 Webster's New World College Dictionary
 
 1150 (4th ed.2010). Therefore, by its plain meaning the term "property" is not limited to buildings or other structures affixed to land but also encompasses the land itself. Accordingly, upon Defendant's entry onto the real property upon which the Options building is situated, he was in violation of N.C. Gen.Stat. § 50B-4.1(g1).
 
 [1]
 

 We further observe that the General Assembly's use of the broad term "property"-as opposed to a more restrictive word such as "building"-in N.C. Gen.Stat. § 50B-4.1(g1) is consistent with the purposes underlying the Domestic Violence Act. As the Supreme Court has held, "[o]ur General Assembly enacted the Domestic Violence Act ... to respond to the serious and invisible problem of domestic violence."
 
 State v. Elder,
 

 368 N.C. 70
 
 , 72,
 
 773 S.E.2d 51
 
 , 53 (2015) (citation and quotation marks omitted). "In essence, [the Domestic Violence Act] requires the state to engage in prompt
 
 remedial
 
 action adverse to an individual's property or
 
 *243
 
 liberty interests in order to further the legitimate state interest in immediately and effectively protecting victims of domestic violence."
 
 Thomas v. Williams,
 
 ---N.C.App. ----, ----,
 
 773 S.E.2d 900
 
 , 903-04 (2015) (citation, quotation marks, and brackets omitted). By preventing persons subject to a DVPO from entering not only the domestic violence shelter where the victim resides but also the real property on which the shelter is situated, the General Assembly sought to maximize the protection afforded to victims of domestic violence from their abusers.
 
 [2]
 

 Finally, we reject Defendant's argument that the rule of lenity requires a different result. "When construing an ambiguous criminal statute, we must apply the rule of lenity, which requires us to strictly construe the statute in favor of the defendant. However, this rule does not require that words be given their narrowest or most
 
 *235
 
 strained possible meaning. A criminal statute is still construed utilizing common sense and legislative intent."
 
 In re N.T.,
 

 214 N.C.App. 136
 
 , 140,
 
 715 S.E.2d 183
 
 , 185 (2011) (citation, quotation marks, and brackets omitted).
 
 See
 

 Abshire,
 

 363 N.C. at 332
 
 ,
 
 677 S.E.2d at 451
 
 ("The rule of lenity requires that we strictly construe ambiguous criminal statutes. However, construing the word 'address' in terms of indicating defendant's residence is not a liberal reading in favor of the State; rather, it is the only plausible reading that comports with the legislative purpose in enacting the registration program." (internal citation omitted)).
 

 As discussed above, adoption of the plain and ordinary meaning of the statutory term "property" in the present context mandates the conclusion that it encompasses both the Options building itself and the land upon which the building sits. We cannot agree with Defendant that the rule of lenity requires us to adopt an unduly narrow definition of the term that would lead to a contrary result.
 

 *244
 
 Defendant does not dispute that (1) he was subject to the DVPO previously obtained by Triplett; (2) Triplett resided at Options on 8 August 2014; and (3) he parked his car in the Options parking lot and then walked up to the front door of the shelter on that date. Having determined that his actions constituted an unlawful entry onto the property of Options within the meaning of N.C. Gen.Stat. § 50B-4.1(g1), we therefore conclude that the trial court properly denied Defendant's motions to dismiss.
 
 [3]
 

 Conclusion
 

 For the reasons stated above, we conclude that the trial court did not err in denying Defendant's motions to dismiss and that Defendant received a fair trial free from error.
 

 NO ERROR.
 

 Chief Judge McGEE and Judge GEER concur.
 

 [1]
 

 We note that N.C. Gen.Stat. § 50B-4.1(g1) does not contain a
 
 mens rea
 
 requirement. Therefore, Defendant's act of entry onto the property in and of itself constituted a violation of the statute regardless of his motive for doing so.
 

 [2]
 

 While not essential to our holding, we note that in a separate subsection of N.C. Gen.Stat. § 50B-4.1, the General Assembly utilized the phrase "residence or household."
 
 See
 
 N.C. Gen.Stat. § 50B-4.1(b). Thus, by using the term "property" in subsection (g1) rather than repeating the phrase "residence or household," the legislature demonstrated its awareness that the word "property" possessed a different meaning.
 
 See generally
 

 Abshire,
 

 363 N.C. at 332
 
 ,
 
 677 S.E.2d at 451
 
 (reading statute at issue
 
 in pari materia
 
 with related statutes in order to determine definition of undefined statutory term);
 
 see also
 

 Comstock,
 
 ---N.C.App. at ----,
 
 780 S.E.2d at 186
 
 (explaining that "statutory provisions concerning the same subject matter must be construed together and harmonized to give effect to each. Where ... the General Assembly includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that the legislative body acts intentionally and purposely in the disparate inclusion or exclusion" (internal citations, quotation marks, and brackets omitted)).
 

 [3]
 

 Defendant's appellate brief also contains an argument that the trial court committed plain error by failing to instruct the jury on the lesser-included offense of misdemeanor violation of a DVPO. However, because Defendant conceded at oral argument that no legal support existed for this argument, we need not address this issue.
 
 See
 

 State v. Stroud,
 

 147 N.C.App. 549
 
 , 564,
 
 557 S.E.2d 544
 
 , 553 (2001) ("[Defendant] conceded at oral argument the case law did not support her argument, and she abandoned this argument. Therefore, we dismiss this assignment of error."),
 
 cert. denied,
 

 356 N.C. 623
 
 ,
 
 575 S.E.2d 758
 
 (2002).