IN RE BORDEN

[216 N.C. App. 579 (2011)]

---

IN THE MATTER OF MITCHELL BORDEN

No. COA11-306

(Filed 1 November 2011)

**Sexual Offenders—registration—termination**

The trial court erred when it terminated petitioner's sex offender registration requirement pursuant to N.C.G.S. § 14-208.12A where a Kentucky registration requirement for a Kentucky crime had expired but petitioner had not been registered in North Carolina for ten years. The North Carolina legislature intended to define "initial county registration" to mean initial county registration in North Carolina.

Appeal by the State from order entered 13 October 2010 by Judge John O. Craig, III, in Guilford County Superior Court. Heard in the Court of Appeals 15 September 2011.

*Roy Cooper, Attorney General, by Catherine F. Jordan, Assistant Attorney General, for the State.*

*No brief filed for petitioner.*

THIGPEN, Judge.

The State of North Carolina ("the State") appeals from an order terminating Mitchell Borden's ("Petitioner") sex offender registration requirement pursuant to N.C. Gen. Stat. § 14-208.12A (2009). We must determine whether the term "initial county registration" as provided in N.C. Gen. Stat. § 14-208.12A(a) means the date of initial county reg-

IN RE BORDEN

[216 N.C. App. 579 (2011)]

istration in North Carolina or in any jurisdiction. Because "initial county registration" means the date of initial county registration in North Carolina, and Petitioner has not been registered as a sex offender in North Carolina for at least ten years, we reverse the trial court's order.

Petitioner was convicted of "Rape 1" or "Sexual Abuse 1st Degree"[1] in February 1995 in Fayette County, Kentucky. In 2010, Petitioner received a written notice from the Kentucky Sex Offender Registry stating, "The period of time for which you were required to register as a sex offender in the Commonwealth of Kentucky has expired. As of June 25, 2010 you are no longer required to register as a sex offender with the Kentucky Sex Offender Registry for the above referenced offense." Subsequently, on 14 September 2010, Petitioner filed a petition for termination of sex offender registration in Guilford County Superior Court. The petition lists Petitioner's date of initial county registration in North Carolina as 1 June 2009.[2]

On 13 October 2010, the trial court heard Petitioner's petition for termination of sex offender registration. The trial court reviewed the letter from the Kentucky Sex Offender Registry removing Petitioner from the registry. The trial court also reviewed Petitioner's North Carolina criminal record and determined that "it appears there were a couple of charges but they were dismissed." The trial court then stated, "I think he would probably qualify to have his petition granted." In response, the prosecutor raised the following concern:

[T]he only hitch I potentially see is the statute allows he can petition after 10 years from the date of initial county registration, which if he states he's only been living here for two years, his county registration here wouldn't be 10 years old. However, it would seem to me that the fact that he's off the registry in Kentucky, that would trump, but I'm just highlighting what I see as the only potential flaw—or problem with the statute.

1. Petitioner indicated on his petition for termination of sex offender registration that he was convicted of "Rape 1"; however, the notice from the Kentucky Sex Offender Registry lists Petitioner's offense as "Sexual Abuse 1st Degree."

2. We note that the date Petitioner initially registered as a sex offender in North Carolina is not clear from the record. On his petition for termination of sex offender registration, Petitioner listed his "Date of Original NC registration" as 1 June 2009. Similarly, at the 13 October 2010 hearing before the trial court, when asked how long he had resided in North Carolina, Petitioner told the trial court, "It will be two years in June, sir." Conversely, the State's Motion to Stay Order states that "[a]lthough [Petitioner's] petition indicates his date of initial county registration in North Carolina was June 1, 2009, information in the Clerk of Court's file, 10 CRS 24618, shows his date of initial county registration in North Carolina was actually March 1, 2002."

The trial court replied, "I would read that to mean initial county registration in any jurisdiction[.]" The trial court then entered an order terminating Petitioner's sex offender registration requirement and finding, *inter alia*, that Petitioner "has been subject to North Carolina registration requirements of Part 2 of Article 27A for at least ten (10) years beginning with the Date Of Initial NC Registration above. Kentucky registration 1995." The State appeals from this order.

In this case, we must determine whether the North Carolina General Assembly intended for "the date of initial county registration" to mean the date of initial county registration in North Carolina or in any jurisdiction.

"Resolution of issues involving statutory construction is ultimately a question of law for the courts. Where an appeal presents a question of statutory interpretation, full review is appropriate, and we review a trial court's conclusions of law *de novo*." *State v. Davison*, 201 N.C. App. 354, 357, 689 S.E.2d 510, 513 (2009) (citations and quotation marks omitted), *disc. review denied*, ___ N.C. ___, 703 S.E.2d 738 (2010).

We determine matters of statutory construction as follows:

> When the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required. However, when the language of a statute is ambiguous, this Court will determine the purpose of the statute and the intent of the legislature in its enactment. Moreover, when confronted with a clear and unambiguous statute, courts are without power to interpolate, or superimpose, provisions and limitations not contained therein.

*In re R.L.C.*, 361 N.C. 287, 292, 643 S.E.2d 920, 923 (2007) (internal citations and quotation marks omitted). "The best indicia of the legislature's intent are the language of the statute or ordinance, the spirit of the act and what the act seeks to accomplish. Moreover, in discerning the intent of the General Assembly, statutes *in pari materia* should be construed together and harmonized whenever possible." *State v. Abshire*, 363 N.C. 322, 330, 677 S.E.2d 444, 450 (2009) (quotations and quotation marks omitted). "*In pari materia* is defined as upon the same matter or subject." *Durham Herald Co., Inc. v. North Carolina Low-Level Radioactive Waste Management Authority*, 110 N.C. App. 607, 612, 430 S.E.2d 441, 445 (citations and quotation marks omitted), *disc. review denied*, 334 N.C. 619, 435 S.E.2d 334 (1993).

The purpose of the North Carolina Sex Offender and Public Protection Registration Program ("Registration Program") is outlined in N.C. Gen. Stat. § 14-208.5 (2009):

> [I]t is the purpose of this Article to assist law enforcement agencies' efforts to protect communities by requiring persons who are convicted of sex offenses or of certain other offenses committed against minors to register with law enforcement agencies, to require the exchange of relevant information about those offenders among law enforcement agencies, and to authorize the access to necessary and relevant information about those offenders to others as provided in this Article.

*See also Abshire*, 363 N.C. at 330, 677 S.E.2d at 450 (stating "[t]he registration program was designed to assist law enforcement agencies and the public in knowing the whereabouts of sex offenders and in locating them when necessary"). With the creation of this program, the legislature explicitly recognized that "sex offenders often pose a high risk of engaging in sex offenses even after being released from incarceration or commitment and that protection of the public from sex offenders is of paramount governmental interest." N.C. Gen. Stat. § 14-208.5. Furthermore, the legislature recognized that individuals who commit certain types of offenses against minors, "such as kidnapping, pose significant and unacceptable threats to the public safety and welfare of the children in this State and that the protection of those children is of great governmental interest." *Id.*

The Registration Program requires the following persons to register:

> A person who is a State resident and who has a reportable conviction[3] shall be required to maintain registration with the sheriff of the county where the person resides. If the person moves to North Carolina from outside this State, the person shall register within three business days of establishing residence in this State, or whenever the person has been present in the State for 15 days, whichever comes first.

---

3. The definition of "reportable conviction" includes "[a] final conviction in another state of an offense, which if committed in this State, is substantially similar to an offense against a minor or a sexually violent offense as defined by this section, or a final conviction in another state of an offense that requires registration under the sex offender registration statutes of that state." N.C. Gen. Stat. § 14-208.6(4)(b) (2009). Here, Petitioner was convicted of "Rape 1" or "Sexual Abuse 1st Degree" in Kentucky in 1995 and was required to register as a sex offender in Kentucky; thus, Petitioner's 1995 Kentucky conviction is a reportable conviction under the North Carolina Registration Program.

N.C. Gen. Stat. § 14-208.7(a) (2009). "Registration shall be maintained for a period of at least 30 years following the date of initial county registration unless the person, after 10 years of registration, successfully petitions the superior court to shorten his or her registration time period under G.S. 14-208.12A." *Id.* N.C. Gen. Stat. § 14-208.12A(a) states:

Ten years from the date of *initial county registration,* a person required to register under this Part may petition the superior court in the district where the person resides to terminate the 30-year registration requirement if the person has not been convicted of a subsequent offense requiring registration under this Article.

(Emphasis added).

Considering the provisions of the Registration Program *in pari materia,* we conclude the legislature intended for "initial county registration" to mean initial county registration in North Carolina. "[T]he twin aims of the North Carolina Sex Offender and Public Protection Registration Program, [are] public safety and protection[.]" *State v. Bryant,* 359 N.C. 554, 560, 614 S.E.2d 479, 483 (2005) (citation omitted). Allowing registered offenders to be removed from the sex offender registry without being on the registry for at least ten years in North Carolina contradicts the intent of the statutes to protect the public, maintain public safety, and assist law enforcement agencies and the public in knowing the whereabouts of sex offenders. *See id.*; *Abshire,* 363 N.C. at 330, 677 S.E.2d at 450.

Additionally, construing "initial county registration" to mean initial county registration in North Carolina is consistent with the definitions provided in the Registration Program. For instance, N.C. Gen. Stat. § 14-208.6 defines "county registry" as "the information compiled by the sheriff of a county in compliance with this Article" and "sheriff" as "the sheriff of a county in this State." N.C. Gen. Stat. § 14-208.6(1b) and (7). These definitions demonstrate the legislature's intent to define "initial county registration" as a sex offender's initial registration with a sheriff of a county in this State.

In this case, the trial court incorrectly interpreted "initial county registration" to mean "initial county registration in any jurisdiction." While Petitioner had been registered as a sex offender in Kentucky

**IN RE BORDEN**

[216 N.C. App. 579 (2011)]

for at least ten years,[4] the record shows he was not registered in North Carolina for at least ten years. Thus, the trial court erred when it terminated Petitioner's sex offender registration requirement. Accordingly, we reverse the trial court's order.

REVERSED.

Judges GEER and STROUD concur.

---

4. Although it is not clear from the record when Petitioner initially registered in North Carolina, using the earliest date in the record, 1 March 2002, Petitioner has not been registered in North Carolina for at least ten years.