IN THE SUPREME COURT OF NORTH CAROLINA

No. 344PA21

Filed 15 December 2023

STATE OF NORTH CAROLINA

v.

LARRY FRITSCHE

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 283 N.C. App. 411, 872 S.E.2d 838 (2022), affirming an order entered on 7 May 2021 by Judge Paul C. Ridgeway in Superior Court, Wake County. Heard in the Supreme Court on 20 September 2023.

*Joshua H. Stein, Attorney General, by Bryan G. Nichols, Special Deputy Attorney General, for the State-appellee.*

*CarnesWarwick, by Amy Lynne Schmitz and Jonathan A. Carnes, for defendant-appellant.*

NEWBY, Chief Justice.

In this case we determine whether N.C.G.S. § 14-208.12A permits removal of a registered sex offender from the North Carolina Sex Offender Registry (North Carolina registry) ten years after he initially registers in another state. The Court of Appeals has previously held that section 14-208.12A only permits removal of a sex offender from the North Carolina registry ten years after he initially registers in North Carolina. *See In re Borden*, 216 N.C. App. 579, 718 S.E.2d 683 (2011). Because the application of *In re Borden* is consistent with both this Court's duty to give effect

to the meaning of N.C.G.S. § 14-208.12A and the purposes of the sex offender registry, we adopt the reasoning of *In re Borden* and affirm the Court of Appeals.

On 17 November 2000, defendant pled guilty to sexual exploitation of a child in Colorado pursuant to Colo. Rev. Stat. § 18-6-403 (1999). The trial court suspended defendant's sentence and placed him on probation. Defendant subsequently violated the terms of his probation. Accordingly, the trial court revoked defendant's probation and activated his sentence. Defendant served eight years in prison in Colorado. Upon his release, defendant registered with the Colorado Sex Offender Registry on 26 August 2008 as required by Colorado law. *See* Colo. Rev. Stat. § 16-22-103(1)(c) (West, Westlaw through 2023 Legis. Sess.).

In February 2020, defendant moved from Colorado to Florida, where he registered with the Florida Sex Offender Registry as required by Florida law. *See* Fla. Stat. § 943.0435 (2019). In October 2020, defendant moved to North Carolina. On 28 October 2020, defendant petitioned the trial court under N.C.G.S. § 14-208.12B requesting a judicial determination as to whether he must register in North Carolina as a sex offender. On 9 April 2021, the trial court issued an order requiring defendant to register as a sex offender in North Carolina. He did so on 12 April 2021.

On 14 April 2021, defendant filed a petition pursuant to N.C.G.S. § 14-208.12A seeking termination of his requirement to register as a sex offender in North Carolina. *See* N.C.G.S. § 14-208.12A(a) (allowing sex offenders to petition for early removal from the North Carolina registry "[t]en years from the date of initial county

registration" if several qualifications are met). Defendant filed this petition almost thirteen years after initially registering in Colorado. At the hearing on the petition, defendant argued that because ten years had passed since his initial registration in Colorado, he qualified for early termination in North Carolina. On 7 May 2021, the trial court denied defendant's petition. Relying on the Court of Appeals' decision in *In re Borden*, the trial court concluded that because defendant had not been registered as a sex offender in North Carolina for at least ten years, defendant did not meet the requirements for early termination. Defendant appealed.

On appeal, the Court of Appeals affirmed the trial court's denial of defendant's petition for early termination of registration. *State v. Fritsche*, 283 N.C. App. 411, 418, 872 S.E.2d 838, 844 (2022). Like the trial court, the Court of Appeals relied on *In re Borden* in reaching its determination. *See id.* at 413–15, 872 S.E.2d at 841–42. In *In re Borden*, the defendant similarly sought early termination of registration on the North Carolina registry pursuant to section 14-208.12A. *In re Borden*, 216 N.C. App. at 580, 718 S.E.2d at 684. The defendant argued that he was eligible for early termination because more than ten years had elapsed since his initial registration as a sex offender in Kentucky. *Id.* The Court of Appeals held that the plain meaning and purpose of N.C.G.S. § 14-208.12A requires that an offender be registered for at least ten years in North Carolina before being eligible for early termination and, therefore, the Court of Appeals denied the defendant's petition. *Id.* at 583, 718 S.E.2d at 686–87. Accordingly, in the present case, the Court of Appeals concluded that defendant did

not satisfy the required period of registration in North Carolina for early termination. *Fritsche,* 283 N.C. App. at 414–15, 872 S.E.2d at 841–42.[1]

On 3 June 2022, defendant filed a petition for discretionary review with this Court. This Court allowed defendant's petition for discretionary review only as to the issue discussed below.[2]

Here we consider whether the trial court erred in denying defendant's petition for early termination of registration on the North Carolina registry. Accordingly, we must determine whether the trial court erroneously interpreted the language of N.C.G.S. § 14-208.12A. Conclusions of law, such as issues of statutory interpretation, are reviewed de novo by this Court and are subject to full review. *State v. Biber*, 365 N.C. 162, 168, 712 S.E.2d 874, 878 (2011).

This Court neatly summarized the framework for analyzing matters of statutory construction in *In re R.L.C.*:

> When the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required. However, when the

---

[1] Defendant also argued that requiring him to remain on the North Carolina registry for ten years before being eligible for early termination violates the Equal Protection Clauses of the North Carolina Constitution and the Constitution of the United States. The Court of Appeals disagreed, concluding that the requirement is rationally related to the State's legitimate interest in maintaining public safety and protection. *Fritsche*, 283 N.C. App. at 418, 872 S.E.2d at 844.

[2] Defendant also filed a notice of appeal based upon a constitutional question. This Court, however, allowed the State's motion to dismiss the appeal based upon a constitutional question. Defendant raised the same constitutional question as an issue in his petition for discretionary review. This Court denied review of that issue. We therefore do not consider the constitutional issue.

language of the statute is ambiguous, this Court will determine the purpose of the statute and the intent of the legislature in its enactment.

361 N.C. 287, 292, 643 S.E.2d 920, 923 (2007). In cases of ambiguous statutory language, we examine the language of the statute itself, the context, and what the legislation seeks to accomplish as the best indicators of the legislature's intent. *State v. Abshire*, 363 N.C. 322, 330, 677 S.E.2d 444, 450 (2009).

A sex offender who commits certain "reportable convictions" as defined in N.C.G.S. § 14-208.6(4) is "required to maintain registration with the sheriff of the county where the person resides." N.C.G.S. § 14-208.7(a) (2021). The registration requirement generally lasts "for a period of at least 30 years following the date of initial county registration." *Id.* Section 14-208.12A provides an exception to the thirty-year registration requirement and allows an offender to petition for early termination of registration "[t]en years from the date of initial county registration . . . ." N.C.G.S. § 14-208.12A.

The precise question we must answer is whether the word "county" in the relevant statutes refers to a county of any state or only one in North Carolina. Because the term "county" is subject to different interpretations, we look to the statutory language, its context, and legislative purpose.

The General Assembly passed section 14-208.12A as part of Article 27A: Sex Offender and Public Protection Registration Programs. Under Article 27A, "[c]ounty registry" is defined as "[t]he information compiled by the *sheriff of a county* in

compliance with this Article." N.C.G.S. § 14-208.6(1b) (2021) (emphasis added). Additionally, "[s]heriff" is defined as "[t]he sheriff of a county *in this State*." N.C.G.S. § 14-208.6(7) (2021) (emphasis added).

Because the definitions under Article 27A refer specifically to counties in North Carolina, "initial county registration" in section 14-208.12A must mean the first registration compiled by a sheriff of a county in the state of North Carolina. Moreover, the purpose of Article 27A aligns with this interpretation of "initial county registration." Article 27A states the purpose of the Sex Offender and Public Protection Registration Programs:

> The General Assembly recognizes that sex offenders often pose a high risk of engaging in sex offenses even after being released from incarceration or commitment and that protection of the public from sex offenders is of paramount governmental interest . . . . Therefore, it is the purpose of this Article to assist law enforcement agencies' efforts to protect communities by requiring persons who are convicted of sex offenses . . . to register with law enforcement agencies . . . .

N.C.G.S. § 14-208.5 (2021); *see also State v. Bryant*, 359 N.C. 554, 560, 614 S.E.2d 479, 483 (2005) (explicitly recognizing the purposes of Article 27A as public safety and protection).

The legislature's purposes in protecting the public and ensuring public safety are not served if sex offenders can avoid registering or maintaining registry in North Carolina as a result of time spent on another state's sex offender registry. It is an offender's registration in North Carolina—not in other jurisdictions—that protects

North Carolina citizens. *See In re Borden*, 216 N.C. App. at 583, 718 S.E.2d at 686 ("Allowing registered sex offenders to be removed from the sex offender registry without being on the registry for at least ten years in North Carolina contradicts the intent of the statutes to protect the public, maintain public safety, and assist law enforcement agencies and the public in knowing the whereabouts of sex offenders."). North Carolinians ought not be deprived of Article 27A's protections because the same protections were previously afforded to the citizens of another state.

Interpreting "initial county registration" in section 14-208.12A as requiring ten years of registration in North Carolina is further supported by the General Assembly's silence since the Court of Appeals decided *In re Borden* in 2011. Over the past twelve years, the General Assembly has made no attempts to clarify or amend section 14-208.12A in a manner contradictory to the Court of Appeals' reading. This silence from the legislature leaves us to conclude that the General Assembly takes no issue with the Court of Appeals' interpretation of section 14-208.12A in *In re Borden* and lends further credence to our adoption of that interpretation today.

In sum, the trial court correctly applied *In re Borden* in interpreting "initial county registration" in section 14-208.12A as initial registration in North Carolina. As a result, the trial court properly denied defendant's petition for early termination of registration on the North Carolina registry. *In re Borden* provides an apt examination of section 14-208.12A, relying on sound principles of statutory

construction in reaching its holding. Accordingly, the decision of the Court of Appeals

is affirmed.

AFFIRMED.

Justice BARRINGER concurring.

I join in my colleagues' opinion but write separately to note that I would not adopt legislative acquiescence. In my view, legislative intent cannot be gleaned from the General Assembly's silence following a court decision. Instead, it can only be gleaned from the legislature's affirmative acts. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 82–83 (2012) ("When government-adopted texts are given a new meaning, the law is changed; and changing written law, like adopting written law in the first place, is the function of . . . elected legislators and . . . elected executive officials and their delegates."). My concern is that legislative acquiescence vests lawmaking power in the judicial branch, rather than the legislative branch. *See id.*

Furthermore, legislative acquiescence "is based, to begin with, on the patently false premise that the correctness of statutory construction is to be measured by what the current [legislature] desires, rather than by what the law as enacted meant." *Johnson v. Transp. Agency*, 480 U.S. 616, 671 (1987) (Scalia, J., dissenting).

> But even accepting the flawed premise that the intent of the current [legislature], with respect to the provision in isolation, is determinative, one must ignore rudimentary principles of political science to draw any conclusions regarding that intent from the *failure* to enact legislation. The "complicated check on legislation," The Federalist No. 62, p. 378 (C. Rossiter ed. 1961), erected by our Constitution creates an inertia that makes it impossible to assert with any degree of assurance that [legislative] failure to act represents (1) approval of the status quo, as

opposed to (2) inability to agree upon how to alter the status quo, (3) unawareness of the status quo, (4) indifference to the status quo, or even (5) political cowardice.

*Id.* at 671–72.

As I would not adopt legislative acquiescence, I respectfully concur.

Justice DIETZ joins in this concurring opinion.

Justice EARLS dissenting.

On 17 November 2000, Mr. Fritsche pled guilty in Colorado to Sexual Exploitation of a Child based on conduct that occurred when he was seventeen years old. Mr. Fritsche was initially released pending trial; however, he violated his pretrial release conditions when he picked up his younger brother from middle school and thus served eight years in prison. Since his release, Mr. Fritsche has become the father of two boys, who were ages nine and eleven at the time he filed his termination petition. Mr. Fritsche now asks this Court to reverse the trial court's and Court of Appeals' decisions requiring him to remain on the sex offender registry, in part so that he can participate in his children's lives without the restraints of the registry's requirements. Mr. Fritsche contends that the "most devastating" of these requirements prohibits him from attending many of his sons' school and sporting events.

This case requires the Court to determine what the words "initial county registration" mean under N.C.G.S. § 14-208.12A(a). *See* N.C.G.S. § 14-208.12A(a) (2021). Namely, whether those words mean "initial county" in North Carolina or if those words mean exactly what they say: the first county a person registers in. Because I believe that N.C.G.S. § 14-208.12A(a) allows a person to petition the superior court to be removed from the sex offender registry "[t]en years from the date

of initial county registration," *see id.*, whether that initial county is in North Carolina or elsewhere, I dissent.

## I. N.C.G.S. § 14-208.12A

At the outset, it is important to note that Mr. Fritsche has met all the requirements listed in N.C.G.S. § 14-208.12A(a1)(1), (2), and (3), and the only thing keeping him on the sex offender registry is this Court's interpretation of the words "initial county registration."

Subsection 14-208.12A(a) states that:

> Ten years from the date of *initial county registration*, a person required to register under this Part may petition the superior court to terminate the 30-year registration requirement if the person has not been convicted of a subsequent offense requiring registration under this Article.

N.C.G.S. § 14-208.12A(a) (emphasis added). In addition, Subsection (a1) of the statute provides three requirements that must be met before a court may grant an individual's petition to be removed from the sex offender registry. N.C.G.S. § 14-208.12A(a1) (2021). First, the petitioner must "demonstrate[ ] . . . that he or she has not been arrested for any crime that would require registration under this Article since completing the sentence." N.C.G.S. § 14-208.12A(a1)(1). Second, the statute requires that the "requested relief complies with the provisions of the federal Jacob Wetterling Act, as amended, and any other federal standards applicable . . . or required to be met as a condition for the receipt of federal funds by the State."

N.C.G.S. § 14-208.12A(a1)(2). Lastly, the court must be "satisfied that the petitioner is not a current or potential threat to public safety." N.C.G.S. § 14-208.12A(a1)(3).

When interpreting legislative provisions, this Court looks first to the plain meaning of the words. *State v. Fletcher*, 370 N.C. 313, 326 (2017). If "the language of a statute is clear and without ambiguity, it is the duty of this Court to give effect to the plain meaning of the statute, and judicial construction of legislative intent is not required. *In re R.L.C.*, 361 N.C. 287, 292 (2007) (quoting *Diaz v. Div. of Soc. Servs.*, 360 N.C. 384, 387 (2006)). Under the relevant statute or elsewhere in Article 27A, which sets forth the Sex Offender and Public Protection Registration Programs, neither "initial" nor "county" are defined. *See* N.C.G.S. ch. 14, art. 27A; N.C.G.S. § 14-208.6 (2021); N.C.G.S. § 14-208.12A. However, these words are not ambiguous, and thus under our precedent, they must be given their plain meaning.

In *In re Borden*, the Court of Appeals interpreted the words "initial county registration" to mean "initial county registration in North Carolina." 216 N.C. App. 579, 583 (2011). But in doing so, the Court of Appeals deviated from the correct method of statutory interpretation, which required that the words "initial" and "county" be construed in accordance with their ordinary meaning. *See Fletcher*, 370 N.C. at 326. Instead, the Court of Appeals looked to N.C.G.S. § 14-208.12A's purpose, stating that the term "initial county" must refer to the initial county of registration in North Carolina due to the statute's public safety goals. *In re Borden*, 216 N.C. App. at 583. However, the correct method of statutory interpretation required the Court of

Appeals to interpret the term "initial" based on its ordinary meaning of "first," *Initial*, American Heritage Dictionary of the English Language (5th ed. 2011), and to interpret "county" based on its ordinary meaning as "[t]he largest territorial division for local government within a state," *County*, *Black's Law Dictionary* (11th ed. 2019); *see also Initial*, Merriam-Webster Dictionary (11th ed. 2019) (defining "initial" as "of or relating to the beginning . . . being at the beginning"). Thus, taking both terms together, "initial county" refers to the first territorial division of registration, regardless of whether that county is in North Carolina or another state. *See* N.C.G.S. § 14-208.12A(a). This reading of N.C.G.S. § 14-208.12A(a) is also in line with the laws of the rest of the country, as there is only one state, Louisiana, that requires the registration's duration requirement to begin running from the time of initial registration in that state. *See* La. Rev. Stat. Ann. § 15:544.

Moreover, even assuming arguendo that the statute was ambiguous and required the use of statutory construction, the Court of Appeals' analysis collapses the statute's ten-year requirement with subsection (a1)(3) of the statute, which states that in order to grant a termination petition, the court must be "otherwise satisfied that the petitioner is not a current or potential threat to public safety." N.C.G.S. § 14-208.12A(a1)(3). Specifically, the Court of Appeals noted that

> [a]llowing registered offenders to be removed from the sex offender registry without being on the registry for at least ten years in North Carolina contradicts the intent of the statutes to protect the public, maintain public safety, and assist law enforcement agencies and the public in knowing the whereabouts of sex offenders.

*In re Borden*, 216 N.C. App. at 583. While there is no doubt that the purpose of North Carolina's Sex Offender and Public Protection Registration Programs is to protect public safety and that this is an important governmental interest, *see* N.C.G.S. § 14-208.5 (2021), our rules of statutory construction state that a statute "may not be interpreted in a manner which would render any of its words superfluous," *State v. Geter*, 383 N.C. 484, 491 (2022) (quoting *State v. Morgan*, 372 N.C. 609, 614 (2019)). Yet, by determining that subsection (a) and subsection (a1)(3) of N.C.G.S. § 14-208.12A mean the same thing and serve the same purpose, the Court of Appeals' analysis imposes a redundant requirement that a registrant show twice that they are not a threat to public safety. *See id.* Accordingly, this interpretation renders subsection (a1)(3)'s text superfluous. Thus, even if the Court of Appeals had been correct to proceed with statutory construction, its analysis is incorrect under our precedent and should be disregarded. *See id.*

The Court of Appeals in *In re Borden* also determined that interpreting "initial county registration" to mean "initial county registration in North Carolina" was consistent with the definitions provided in Article 27A. *In re Borden*, 216 N.C. App. at 583. In doing so, the court noted that under N.C.G.S. § 14-208.6, "county registry" is defined as "information compiled by the sheriff of a county in compliance with this Article," while "sheriff" is defined as "sheriff of a county in this State." *Id.*; *see* N.C.G.S. § 14-208.6(1b), (7) (2021). However, these definitions do not actually refer to or reference the words "initial county registration." *See* N.C.G.S. § 14-208.12A(a).

Furthermore, other portions of Article 27A specifically include the modifier "North Carolina" or "this State," supporting that if the General Assembly had intended to insert "in North Carolina" after the words "initial county registration" it would have done so. *See, e.g.,* N.C.G.S. § 14-208.9(b) (2021) (using the modifier "this State"); N.C.G.S. § 14-208.12A(a) (referencing a conviction "that occurred in North Carolina").

## II. The Adam Walsh Act

Additionally, to the extent that statutory construction of the General Assembly's intent was necessary, the proper course was to look directly to the text of the statute at issue which expressly states the General Assembly's intent to comply with the Adam Walsh Child Protection and Safety Act of 2006 (Adam Walsh Act), 34 U.S.C. § 20901.[1] *See* N.C.G.S. § 14-208.12A(a1)(2); *see also C Invs. 2, LLC v. Auger*, 383 N.C. 1, 8 (2022) (stating that "[l]egislative will must be found from the legislative language of the act" (cleaned up)). This is evident in its passing of N.C.G.S. § 14-208.12A and, more specifically, in determining the provisions a registrant must meet to be removed from the registry. Under subsection (a1)(2), a petition to terminate registration may be granted when

> [t]he requested relief complies with the provisions of the federal Jacob Wetterling Act, as amended, and any other federal standards applicable to the termination of a

---

[1] In 1994, Congress enacted the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act (Jacob Wetterling Act), which set minimum standards for state sex offender programs and conditions federal law enforcement funding on a state's adoption of sex offender registration laws. *Smith v. Doe*, 538 U.S. 84, 89–90 (2003). In 2006, Congress repealed the Jacob Wetterling Act and replaced it with the Adam Walsh Act, which is now codified at 34 U.S.C. § 20901.

registration requirement or required to be met as a
condition for the receipt of federal funds by the State.

N.C.G.S. § 14-208.12A(a1)(2). The Court of Appeals interpreted subsection (a1)(2) in

*In re McClain* and determined that the section's purpose was to "bring [North

Carolina's] program in line with the external federal standards" to receive federal

funding. 226 N.C. App. 465, 468 (2013). Thus, any reading of N.C.G.S. § 14-208.12A

that is inconsistent with the Adam Walsh Act is also inconsistent with the General

Assembly's intent in passing the same.

The Adam Walsh Act was established "in response to the vicious attacks

[against children] by violent predators" and to "protect the public from sex offenders

and offenders against children" more generally. *Id.* In pertinent part, the Adam

Walsh Act contains two registration requirements which provide context for the term

"initial." The first is termed a "general" requirement, which describes what is

required of a registrant to keep their registration current. This section provides:

> A sex offender shall register, and keep the registration
> current, in each jurisdiction where the offender resides,
> where the offender is an employee, and where the offender
> is a student. *For initial registration purposes only, a sex*
> *offender shall also register in the jurisdiction in which*
> *convicted if such jurisdiction is different from the*
> *jurisdiction of residence.*

34 U.S.C. § 20913(a) (emphasis added). Next, the statute addresses a registrant's

"initial registration" and discusses when an offender's first or initial registration

must occur. 34 U.S.C. § 20913(b). Namely, the section provides that "initial

registration" should occur (1) "before completing a sentence of imprisonment with

respect to the offense giving rise to the registration requirement;" or (2) "not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment." *Id*. Both factors support that the term "initial" refers to the very first time an offender registers, regardless of what state that initial registration occurs in. Moreover, any interpretation that limits a person's initial registration to a particular state would be unreasoned because people are convicted of sex offenses in all jurisdictions. A registrant's first registration is likely to occur in the same jurisdiction in which their offense took place as there is a short time frame for when initial registration must occur. *See id*.

Regarding the duration of a registration requirement, the Adam Walsh Act states that a tier I[2] sex offender's registration period may be reduced from fifteen years to ten years if they maintain a clean record.[3] 34 U.S.C. § 20915(a), (b)(1)–(3). North Carolina's statute, N.C.G.S. § 14-208.12A, is consistent with this—as it allows a court to terminate "the thirty-year registration requirement" "after ten years from the date of initial county registration"—if "[t]he petitioner demonstrates . . . that [they have] not been arrested for any crime that would require registration" under the statute. N.C.G.S. § 14-208.12A(a), (a1)(1).

Moreover, while the Adam Walsh Act requires a registrant to register, "[f]or

---

[2] It was uncontested at the time of the termination of registration hearing that Mr. Fritsche was considered a tier I sex offender pursuant to federal law.

[3] The now-repealed Jacob Wetterling Act also had a similar ten-year registration requirement. *See* 42 U.S.C. § 14071(b)(6)(A) (repealed 2006).

initial registration purposes only, . . . in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence," 34 U.S.C. § 20913(a), it does not require a registrant to restart the minimum ten-year registration period each time they move, *see id*. Also, as evidenced by 34 U.S.C. § 20913(c), federal law seems to view the registration requirement as a single ongoing requirement that is not dependent on what state the registrant lives in. 34 U.S.C. § 20913(c). Namely, 34 U.S.C. § 20913 requires an offender to keep their registration current by maintaining registration in at least one jurisdiction. *Id*. This jurisdiction is one where the offender resides, is an employee, or is a student. 34 U.S.C. § 20913(a). However, this provision does not differentiate between the several states, and rather it suggests that under federal law, a registrant's registration is current so long as they are registered in a jurisdiction where they live, work, or study, regardless of the state. 34 U.S.C. § 20913(a)–(c).

Our General Statutes also contemplate that an initial registration requirement could occur either in North Carolina or in another state. In pertinent part, N.C.G.S. § 14-208.12A(a) provides:

> If the reportable conviction is for an offense that occurred in North Carolina, the petition shall be filed in the district where the person was convicted of the offense.

> If the reportable conviction is for an offense that occurred in another state, the petition shall be filed in the district where the person resides.

N.C.G.S. § 14-208.12A(a). If the offense occurred out of state, the person must

complete additional requirements to petition for termination from the registry. Namely, the person must do two things:

> (i) provide written notice to the sheriff of the county where the person was convicted that the person is petitioning the court to terminate the registration requirement and (ii) include with the petition at the time of its filing, an affidavit, signed by the petitioner, that verifies that the petitioner has notified the sheriff of the county where the person was convicted of the petition and that provides the mailing address and contact information for that sheriff.

*Id.* Both requirements are designed to inform the initial county of registration of the offender's intent to terminate the registration requirement. This raises an important question, if N.C.G.S. § 14-208.12A(a) only refers to the initial county of registration in North Carolina, why would the General Assembly include language referencing an initial registration that occurred outside of North Carolina? Instead, it is more logical that "initial county registration" refers to the first county a person registered in, regardless of what state that county was in. *See id.*

### III.    Conclusion

Mr. Fritsche's presence on the registry is accompanied by a variety of legal restrictions. Since moving to North Carolina, these restrictions have impacted his life, particularly his ability to parent his two sons. By requiring that Mr. Fritsche be registered with North Carolina's sex offender registry for ten years, despite having already served over ten combined years on the Colorado and Florida registries, Mr. Fritsche will have spent twenty-three years on a sex offender registry before he is eligible to petition a North Carolina court for termination. By that time, his sons will

be nineteen and twenty-one years old, and he will have missed many, if not all, of their school and sporting events.

A twenty-three year registration period before being eligible for termination of the requirement is not what the North Carolina General Assembly intended. Instead, through the text of N.C.G.S. § 14-208.12A, the legislature made clear that those who have been on the registry for ten years in any jurisdiction and meet the other requirements for removal from the registry should have their petitions granted. Because Mr. Fritsche (1) has now served fifteen years on the registry since his initial registration in 2008, *see* N.C.G.S § 14-208.12A(a); (2) has not committed another crime that would require registration, *see* N.C.G.S. § 14-208.12A(a1)(1); (3) "[t]he requested relief complies with the provisions of the federal Jacob Wetterling Act, as amended," *see* N.C.G.S. § 14-208.12A(a1)(2); and (4) the trial court determined that Mr. Fritsche is not a current or potential threat to public safety, I would reverse the decision of the Court of Appeals.